UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

NEWARK VICINAGE

| | |
|---|---|
| PENN NATIONAL INSURANCE COMPANY, INC.,<br><br>Plaintiff,<br><br>v.<br><br>JRG HOLDING, L.L.C. and JOHN GIAQUINTO,<br><br>Defendants. | Civil Action No.: |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, Penn National Insurance Company, Inc. ("Penn National"), by and through its undersigned counsel, for its Complaint for Declaratory Judgment against Defendants, JRG Holding, L.L.C. and John R. Giaquinto, hereby states as follows:

**JURISDICTION AND VENUE**

1. Jurisdiction in this matter is based upon diversity of citizenship pursuant to 28 U.S.C. §1332a(1).

2. Plaintiff Penn National Insurance Company, Inc. ("Penn National") is a corporation organized under the laws of the Commonwealth of Pennsylvania, with its principal place of business at P.O. Box 1961, Harrisburg, Pennsylvania.

3. Defendant JRG Holding, L.L.C.("JRG Holding") is a limited liability corporation organized under the laws of the State of New Jersey with its principal place of business in New Jersey at 22 Edgewood Road, Edison, New Jersey 08820-3621.

4. Defendant, John R. Giaquinto ("Giaquinto") is a New Jersey resident and is the president of JRG Holding, L.L.C.

5. Plaintiff brings this action to obtain a declaratory judgment finding that Penn National has no duty to defend or indemnify Giaquinto or JRG Holding (hereinafter referred to collectively as

"JRG Holding") in connection with a claim for subrogation tendered by Middlesex Water Company's insurance carrier, Commerce and Industry Insurance Company in connection with the performance of excavation and repair work on a water main break adjacent to JRG Holding's property located at 1951 Route 27, Edison Township, New Jersey, hereinafter the "Site".

6. While performing excavation and repair work on the water main break adjacent to the insured's site, AIG incurred $206,122.13 in remediation costs, and its insured, Middlesex Water Company incurred a $50,000 deductible for total damages of $256,122.13.

7. It is Commerce and Industry's contention that gasoline emanated from JRG Holding's site, which is currently the subject an on-going environmental investigation and remediation.

8. Diversity jurisdiction here exists because: (a) there is complete diversity of citizenship between Penn National and Defendants, and (b) the amount in controversy, including the potential costs of both defending and indemnifying JRG Holding in the underlying claim, exceeds $75,000.

9. Venue is appropriate under 28 U.S.C. §1391 because JRG Holding's principal place of business is in New Jersey, and many of the facts from which the underlying claim originated, i.e., the insurance contracts at issue and the contamination at the site.

## PENN NATIONAL POLICIES

10. Penn National issued Policy No. BP9 0713290 to JRG Holding effective from September 12, 2014 to September 12, 2017. The policy was cancelled on October 16, 2016. A true and correct copy of the Policies is attached hereto as Exhibits A, B and C, respectively.

11. The Policies contain the following insuring agreement:

**Insurance Agreement**

**SECTION II – LIABILITY**

   A.  **Coverages**

   a.  **Business Liability**

We will pay those sums that the insured becomes legally obligated to pay as damages because of …"property damage" to which this insurance applies. We will have the right and duty to defend

the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for ...."property damage" to which this insurance does not apply.

*          *          *

    **b.**    This insurance applies:

        (1)    To…"bodily injury" and "property damage" only if:

            (a)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

            (b)    The "bodily injury" or "property damage" occurs during the policy period; and

            (c)    Prior to the policy period, no insured listed under Paragraph **C.1** Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or a claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.  If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

*          *          *

**(c)**    "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **C.1** Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of "bodily injury" or "property damage" after the end of the policy period.

**(d)** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **C.1** Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

*        *        *

12. The Policies contain the following definitions:

**F.    Liability and Medical Expenses Definitions**

"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

15. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, akalies, chemicals and waste.  Waste includes materials to be recycles, reconditioned or reclaimed.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it;  or

b. Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

13. The Policies contain the following exclusions:

**B.    Exclusions**

**1. Applicable to Business Liability Coverage**

This insurance does not apply to:

### f. Pollution

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured.  However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building or caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises,site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organizzation for whom you may be legally responsible;

 **(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

  **(i)** " Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the itent that they be discharged, dispersed or released as part of the operations being performed by such contractor or subcontractor;

  **(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or contractor; or

  **(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire"; or

 **(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to, or assess the effects of  "pollutants".

  **(2)** Any loss, cost or expense arising out of any:

   **(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

   **(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

   However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request,, demand, order or statutory or regulatory requirement or such claim or "suit" by or on behalf of a governmental authority.

## GROUNDS FOR DECLARATORY JUDGMENT

14. Penn National incorporates by reference Paragraphs 1 - 13 as if fully stated herein.

15. The Underlying Claim does not allege "Property Damage" caused by an "occurrence" as those terms are defined in the Policies.

16. There was no "occurrence" resulting in Property Damage during the policy period.

17. To the extent any "Property Damage" is alleged in the Underlying Claim, the known loss doctrine precludes coverage because the site is the subject of an on-going remediation, and JRG Holding was or should have been aware when it purchased the Policy that there was a substantial probability that there was off-site contamination.

18. To the extent any "Property Damage" is alleged in the Underlying Claim, Exclusion F. Pollution of the Policy precludes coverage.

19. There is no coverage under the Policy for any statutory damages to the extent they are fines or penalties.

20. There is no coverage under the Policy for attorney's fees, "costs of suit", or injunctive relief.

21. There is no coverage under the Policy for any special or treble damages to the extent they are punitive in nature because they would not be insurable under New Jersey law and/or public policy.

22. Penn National has no duty to defend or indemnify JRG Holding in connection with the Underlying Claim.

23. Penn National has no duty to defend or indemnify JRG Holding in connection with the Underlying Claim as a result of the prior Settlement Agreement and Release entered into between Penn National and Defendants.

24. An actual controversy exists between Penn National, on the one hand, and all Defendants, on the other hand, and by the terms and provisions of Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§2201 and 2202, this court is invested with the power to declare the rights and liabilities of the party hereto and to grant such relief as it deems necessary and proper.

WHEREFORE, Plaintiff, Penn National Insurance Company, Inc. respectfully requests this Honorable Court to declare the controversy as follows:

A. Declare that Penn National has no duty to defend JRG Holding L.L.C. in the Underlying Claim;

B. Declare that Penn National has no duty to defend John R. Giaquinto in the Underlying Claim;

C. Declare that Penn National has no duty to indemnify JRG Holding L.L.C. for any loss or damages arising from the Underlying Claim;

D. Declare that Penn National has no duty to indemnify John R. Giaquinto for any loss or damages arising from the Underlying Claim;

E. Grant any other relief that this Honorable Court deems equitable and just under the circumstances, including the award of costs and fees.

        Respectfuly submitted,

        **/s/ Lila Wynne**

        _____
        LILA WYNNE, ESQUIRE
        Marshall, Dennehey, Warner, Coleman & Goggin
        15000 Midlantic Drive
        Mount Laurel, NJ 08054
        Attorneys for Plaintiff – Penn National Insurance Co.

Dated:  October 20, 2017